## 2787. PATTERSON *v.* PIEDMONT CANDY COMPANY.

The claimant having shown title in himself, and the plaintiff in fi. fa. having failed to show that title was ever in the defendant in fi. fa., it was error to direct a verdict finding the property subject to the execution.

DECIDED JANUARY 31, 1911.

Claim; from Fulton superior court—Judge Pendleton. May 14, 1910.

*Philip H. Alston,* for plaintiff in error.

*W. C. Hendrix, Mayson & Johnson,* contra.

POWELL, J. This case arose out of the levy of a justice's court fi. fa. in favor of the Piedmont Candy Company against the Pat-

terson-Scrutchin Company upon a number of peanut-vending machines and stands, and the filing of a claim thereto by F. W. Patterson. It appears, from the evidence, that Patterson and Thomas Scrutchin had in the summer months of the year 1908 bought a number of peanut-vending machines, together with the right to operate them, and had installed the machines at various points in the city of Atlanta. Patterson, it seems, had advanced all the money, but had taken Scrutchin's note for half of it. During the last of August, or about the first of September, it seems, they contemplated forming a corporation under the name of the Patterson-Scrutchin Company, to carry on this business. However, on the first day of September and prior to the time the charter of the proposed corporation was granted, a written contract was entered into between Patterson and Scrutchin, reciting the joint purchase of the machines and the intent to operate them, reciting the amount of money that Patterson had advanced and that it was to be secured by Scrutchin's transferring to Patterson the stock that was to be issued to him in the Patterson-Scrutchin Company, and further reciting that Patterson was to sell his interest in the business to Scrutchin for a named amount, for which Scrutchin had given his promissory notes; also containing the following clause: "And for the purpose of guaranteeing the prompt payment of said notes, the said Scrutchin hereby conveys all his right, title, and interest in and to the business of the Patterson-Scrutchin Investment Company, and herewith assigns to the said Patterson all contractual rights secured for the benefit of said company, together with five shares of stock in the Patterson-Scrutchin Investment Company, now in the process of incorporation, and together with all machines bought of C. E. Leebold, Howard Vending Machine Company, et al., and such machines and property as may be hereafter acquired by the said Scrutchin or the Patterson-Scrutchin Investment Company in the conduct of said business." Further provision for the securing of Patterson was inserted; also a provision that the Patterson-Scrutchin Company should endorse the Scrutchin notes as soon as the charter should be granted. The paper on its face referred to itself as "this bill of sale." The instrument contained no defeasance clause. Though this paper was executed on September 1, it was not recorded until some time in November. Patterson explained this delay as to recording by saying that soon after

the execution of the paper, he left the city and was gone for about five weeks, and in the meantime he had left the paper in the hands of his attorney, and that when he came back and asked the attorney about it, the attorney suggested that it be recorded, and it was so recorded. He testified explicitly that there was no agreement that the paper should be kept off record, and his testimony as to this point was in no wise disputed.    The fi. fa. of the Piedmont Candy Company was issued upon a judgment obtained in March, 1909, in a suit brought upon two notes executed in the name of the Patterson-Scrutchin Company, both bearing date of December 15, 1908, which, as may be seen by reference, was after the date when Patterson's bill of sale was recorded. These notes appear to have been executed in behalf of the Patterson-Scrutchin Company by "Thomas Scrutchin, Pt." In the written argument it is said that these notes represent an indebtedness existing prior to December 15, 1908, but if this is true, the fact does not appear from the record.

The instrument in question reserved title in Patterson to his half interest in the property mentioned, and conveyed to Patterson the title to Scrutchin's half interest. It was one of those instruments which has a definite, fixed, legal status in this State. Such an instrument, while it partakes somewhat of the nature of an equitable mortgage, nevertheless reserves or passes (as the case may be) the legal title to the property in or to the taker of the instrument—such title as will support trover or statutory claim. Before such contracts can be effective as against third persons they must be in writing; and they are treated as if they are mortgages, so far as registration is concerned. As this instrument was recorded in November, 1908, and the judgment of the defendant in fi. fa. was recovered in March, 1909, the bill of sale was prima facie superior. The legal title was in Patterson from September 1, 1908, and from thence on, unless it became divested in some legally recognized way. Scrutchin had an equitable title (not subject to levy and sale, however) which he could have retained or which he could have transferred to any one else, as, say, to the Patterson-Scrutchin Company. Indeed, the instrument in question seems to contemplate that Scrutchin should transfer his equitable title to the Patterson-Scrutchin Company, and it may be that, taking the evidence as a whole, it is proper to treat the case as if Scrutchin had transferred

all of his interest to that company, although it appears that the corporation was never regularly formed after the charter was granted. There is no evidence that Patterson ever transferred or intended to transfer to this corporation the legal title to the property, which he had reserved as security for his debt; in fact, he strenuously denies that he ever knew that the corporation had been formed. As between the Patterson-Scrutchin Company, considered as a legal entity, and the Piedmont Candy Company, and as between Scrutchin, who is represented as having acted as its president, and the Piedmont Candy Company, there was probably an estoppel to deny the legal existence of the corporation. But there is nothing in the evidence to raise any estoppel against Patterson's asserting that if this alleged corporation ever gained any juridic entity, he had not so acted as to raise any estoppel against himself, or to prejudice his legal title to the property in dispute. Some point is made as to the description contained in the bill of sale. It is contended that the instrument gave Patterson the title only to the vending rights and the intangible property represented by the business the parties were conducting. As the express language used is "together with all machines bought of [person designated], and such machines and property as may be hereafter acquired . . . in the conduct of said business," we think that tangible property was in contemplation.

We have considered the record carefully, and while there may be some broad moral reason for saying that as between Patterson and the Candy Company, the former, rather than the latter, should lose in the transaction, still, so far as we can see, there is not the slightest legal reason for saying that Patterson has forfeited the legal title which he reserved and took under the instrument of September 1, 1908, or that the defendant in fi. fa. has ever acquired in any wise any such title to the property as to be subject to levy. Counsel for the defendant in error has filed a very full and exhaustive brief upon the proposition as to how difficult it is for one interested in a corporation, especially an insolvent corporation, to get such title from it as will be protected against the rights of creditors, but as it does not appear that title has ever passed into this corporation, or alleged corporation (the defendant in fi. fa.), we can not concede the applicability of the cases cited.

*Judgment reversed:*